## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK
### CENTRAL ISLIP

| | |
|---|---|
| JOSEPH FISCHETTI, individually and on behalf of all others similarly situated, | 2:24-cv-01135 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| MONDELĒZ GLOBAL LLC, | |
| Defendant | Jury Trial Demanded |

Plaintiff Joseph Fischetti ("Plaintiff") alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

## I.   INCREASING DEMAND FOR REAL CHEESE

1.   Consumers are increasingly seeking healthier choices across the foods they buy, including snacks.

2.   The result is increased attention to a food's ingredients.

3.   According to a food industry executive, "Consumers are reading product labels more closely, and we are seeing the effects of a simple food movement when it comes to ingredients," especially in snacks.

4.   Consumer research company Mintel attributed this demand for "real ingredients" in part due to media attention focused on lack of transparency in the

food industry.[1]

5.    This is because shoppers want to consume foods with the types of ingredients they have in their refrigerators, instead of lower value highly processed substitutes.

6.    One of these ingredients is cheese.

7.    Industry data confirms the increased popularity of cheese, with price and per capita consumption rising over the past decade relative to other foods, reaching an all-time high of 50 lbs.

8.    Multiple reasons explain the surge in popularity for cheese.

9.    First, consumer demand for cheese is consistent with growing preferences for natural foods, made without chemicals or harsh processing.

10.   Cheese's definition, as "the coagulated, compressed, and usually ripened curd of milk separated from the whey," fits this bill.[2]

11.   Second, more than half the public consider cheese "healthy" and "nutritious," because it is high in protein and good fats, with key vitamins and minerals like calcium.

12.   That this factor was important to consumers was observed by a marketing executive, noting how "Dairy, in its many forms, is increasingly seen as

---

[1] Lynn Dornblaser, Director, Innovation & Insight, Mintel, "Clean Label: Why this Trend is Important Now," 2017.
[2] Merriam-Webster definition.

an inherently healthy simple food."

13.  Third, cheese is used in a growing number of prepared and packaged applications, instead of only consumed in cubes, slices, or sticks.

14.  Fourth, since research shows "consumers initially [] rely on extrinsic cues such as visual information on labels and packaging" to "develop[] sensory [and other] expectations" about its ingredients, marketers know claims like "made with real cheese" add value to shelf stable foods consumers may have written off years ago as full of artificial and highly processed ingredients.[3]

15.  This is because cheese "has indulgent properties for consumers who want to 'treat themselves,'" in addition to its reputation as nutritious.[4]

## II.   LEGAL BACKGROUND

16.  The preference for wholesome ingredients like cheese instead of lower quality cheese substitutes is not new.

17.  In response to an unregulated environment where companies substituted cheese by-products for the real cheese prominently advertised, the Pure Food and Drug Act of 1906 sought to protect consumers from such deception.

---

[3]  Lancelot Miltgen et al., "Communicating Sensory Attributes and Innovation through Food Product Labeling," Journal of Food Product Marketing, 22.2 (2016): 219-239; Helena Blackmore et al., "A Taste of Things to Come: The Effect of Extrinsic and Intrinsic Cues on Perceived Properties of Beer Mediated by Expectations," Food Quality and Preference, 94 (2021): 104326.

[4]  https://www.freedoniagroup.com/blog/3-top-trends-impacting-cheese-sales

18.   These requirements were strengthened when Congress adopted the Federal Food, Drug and Cosmetic Act ("FFDCA") in 1938. 21 U.S.C. § 301 *et seq*.

19.   As a leading dairy producer, New York was one of the first states to adopt the FFDCA through its Agriculture and Markets Law ("AGM"), to "encourage the agricultural industry…[and] to prevent frauds in the traffic therein." AGM § 3.[5]

20.   The Legislature considered the AGM "an exercise of the police power of the state and a discharge of its obligations for the promotion of the general welfare."

## III.  PRODUCT LABELING

21.   In response to this increased consumer demand for wholesome ingredients in shelf stable packed foods,  Mondelez Global LLC ("Defendant") markets Ritz Bits Cracker Sandwiches, described as having a "filling made with real cheese," above two fresh wedges of bright cheddar cheese, and crackers filled with what appeared to be real cheese, with "Cheese" set off from "Flavored Filling With

---

[5] Article 4, Dairy Products, AGM § 46 *et seq.*; Article 17, Adulteration, Packing, and Branding of Food and Food Products, AGM § 198 *et seq*.; Official Compilation of Codes, Rules and Regulations of  the State of New York ("N.Y.C.R.R."), Title 1, Department of Agriculture and Markets, Chapter I, Milk Control, Subchapter A Dairy Products (Article 4, AGM), Part 17, Requirements for the Labeling of, and Definitions and Standards of Identity for, Milk, Milk Products and Frozen Desserts, 1 N.Y.C.R.R. §§ 17.18 ("Additional standards of identity for milk and milk products.") and 17.20 ("Requirements applicable to the labeling of milk, milk products and frozen desserts.") (adopting Parts 130, 131 and 133 of Title 21), Chapter VI, Food Control, Subchapter C, Food and Food Products (Article 17, AGM), 1 N.Y.C.R.R. § 250.1 *et seq*.; 1 N.Y.C.R.R. § 259.1(a) (adopting Parts 100, 101 and 102 of Title 21).

Other Natural Flavor" ("Product").



22.   Despite emphasizing that the "filling [is] made with real cheese," and how the crackers contain a "Cheese Flavored Filling With Other Natural Flavor," the primary component of this filling is not cheese.

23.    This is revealed through the fine print of the ingredient list on the side of the package, listing "WHEY," and even "SUGAR," before "CHEDDAR CHEESE POWDER." 21 C.F.R. § 101.4(a)(1).

5



**INGREDIENTS:** UNBLEACHED ENRICHED FLOUR (WHEAT FLOUR, NIACIN, REDUCED IRON, THIAMINE MONONITRATE {VITAMIN B1}, RIBOFLAVIN {VITAMIN B2}, FOLIC ACID), PALM OIL, SOYBEAN AND/OR CANOLA OIL, WHEY (FROM MILK), SUGAR, CHEDDAR CHEESE POWDER (PASTEURIZED MILK, CHEESE CULTURES, SALT, ENZYMES), LEAVENING (CALCIUM PHOSPHATE, BAKING SODA), SALT, SODIUM PHOSPHATE, NATURAL FLAVOR, YEAST EXTRACT, SOY LECITHIN, CORNSTARCH, TURMERIC AND ANNATTO EXTRACTS (FOR COLOR).

24.   Whey is not a required ingredient in any "real cheese," as consumers understand this term.

25.   Whey is the watery liquid which remains when curds are strained from milk to produce "real cheese."

26.   Since one pound of cheese results in nine pounds of whey, increased production of cheese has created a surplus of whey.

27.   Whey consists predominantly of lactose, a sugar, and a small amount of

protein.

28.   However, whey lacks milkfat, the most important ingredient in real cheese, along with other proteins, vitamins and minerals.

29.   Whey also lacks the savory taste of real cheese.

30.   Whey is mainly used for dietary supplements or fertilizer.[6]

31.   According to academic treatises and journals, whey is increasingly used to increase yield and protein content of foods containing smaller amounts of cheese, at lower costs, because it lacks the most valuable component of milkfat.[7]

32.   By including whey as a filler, companies can provide less real cheese.

## IV.  LABELING IS MISLEADING

33.   Sections 349 and 350 of the New York General Business Law ("GBL") were modeled on the Federal Trade Commission Act ("FTC Act"). 15 U.S.C. 45 *et seq*.

34.   In considering whether advertising is misleading in a material respect, the FTC Act recognizes that the effect of advertising includes not just representations made or suggested by words and images, "but also the extent to which [it] fails to reveal facts material in the light of such representations." 15 U.S.C. § 55(a)(1).

35.   This includes the extent to which labeling may fail to prominently and

---

[6] https://thecounter.org/whey-disposal-reuse-cheese-dairy-byproduct/
[7] Julian Price, "History of the Development and Application of Whey Protein Products," in Whey Proteins, Academic Press, pp. 51-95 (2019).

conspicuously reveal facts relative to the proportions or absence of certain ingredients or other facts concerning its ingredients, which are of material interest to consumers.

36.  The front label statement the "Filling [is] Made With Real Cheese," described a "Cheese Flavored Filling With Other Natural Flavor," above two fresh wedges of bright cheddar cheese, and crackers appearing to be filled with cheese, fails to prominently and conspicuously reveal facts relative to the proportions or absence of real cheese and its substitution with whey.

37.  The replacement of real cheese with whey is of material interest to consumers because real cheese is more expensive than whey.

38.  The replacement of real cheese with whey is of material interest to consumers because real cheese is more nutritious, healthier and flavorful than whey.

39.  By adding whey, purchasers get a smaller amount of the real cheese ingredients promised and/or implied by the front label.

40.  The Product is "misbranded" and misleading because consumers viewing "filling [is] made with real cheese," described as a "Cheese Flavored Filling With Other Natural Flavor," with pictures of two fresh wedges of bright cheddar cheese and crackers filled with what appears to be, will expect the predominant filling ingredient to be real cheese. 21 U.S.C. § 343(a)(1); AGM § 201(1).

41.  Even if "Cheese Flavored Filling With Other Natural Flavor" alerts

consumers to expect the filling may not entirely be real cheese, "made with real cheese" tells them real cheese will be the main or predominant filling ingredient.

42.   The Product's labeling that the "Filling [is] Made With Real Cheese" and is a "Cheese Flavored Filling With Other Natural Flavor," with pictures of two fresh wedges of bright cheddar cheese and crackers filled with what appears to be real cheese, is a "half-truth," because even though the filling contains some real cheese, its predominant ingredient is not real cheese but whey.

## V.   CONCLUSION

43.   As a result of the false and misleading representations and omissions, the Product is sold at a premium price, approximately $3.99 for 8.8 oz, excluding tax and sales, higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

## JURISDICTION

44.   Plaintiff is a citizen of New York.

45.   Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

46.   The aggregate amount in controversy exceeds $5 million, including any statutory or punitive damages, exclusive of interest and costs.

47.   Defendant is a limited liability company.

48.   The membership of Defendant consists of Mondelēz International Inc.

49.    Mondelēz International Inc. is a citizen of Virginia based on its corporate formation.

50.    Mondelēz International Inc. is a citizen of New Jersey based on its principal place of business.

51.    Defendant is a citizen of Virginia and New Jersey based on the citizenship of Mondelēz International Inc.

52.    The class of persons Plaintiff seeks to represent includes persons who are citizens of a different state from which Defendant is a citizen.

53.    The members of the proposed class Plaintiff seeks to represent are more than one hundred, because the Product has been sold at hundreds of retail stores in this State, such as grocery stores, big box stores, warehouse club stores, drug stores, convenience stores, and online to citizens of this State.

54.    The Court has jurisdiction over Defendant because it transacts business within New York and sells the Product to consumers within New York from hundreds of retail stores in this State and online to citizens of this State.

55.    Defendant transacts business in New York, through the sale of the Product to citizens of New York from hundreds of retail stores in this State and online to citizens of this State.

56.    Defendant has committed tortious acts within this State through the distribution and sale of the Product, which is misleading to consumers in this State.

57.  Defendant has committed tortious acts outside this State by labeling, representing and selling the Product in a manner which causes injury to consumers within this State by misleading them as to its contents, amount and/or quality, by regularly doing or soliciting business, or engaging in other persistent courses of conduct to sell the Product to consumers in this State, and/or derives substantial revenue from the sale of the Product in this State.

58.  Defendant has committed tortious acts outside this State by labeling the Product in a manner which causes injury to consumers within this State by misleading them as to its contents, amount and/or quality, through causing the Product to be distributed throughout this State, such that it expects or should reasonably expect such acts to have consequences in this State and derives substantial revenue from interstate or international commerce.

59.  The Court has jurisdiction over Defendant because it transacts business within New York and sells the Product to consumers within New York from hundreds of retail stores in this State and online to citizens of this State.

60.  The Court has jurisdiction over Defendant because it has committed tortious acts within this State through the labeling, distribution and/or sale of the Product, which is misleading to consumers in this State.

61.  The Court has jurisdiction over Defendant because it has committed tortious acts outside this State by labeling, representing and selling the Product in a

manner which causes injury to consumers within this State by misleading them as to its contents, attributes, amount and/or quality, by regularly doing or soliciting business, or engaging in other persistent courses of conduct to sell the Product to consumers in this State, and/or derives substantial revenue from the sale of the Product in this State, such that it expects or should reasonably expect such acts to have consequences in this State and derives substantial revenue from interstate or international commerce.

## VENUE

62.  Plaintiff resides in Nassau County.

63.  Venue in the Central Islip Division of this District is based on Plaintiff's residence in Nassau County.

64.  Venue is based on Plaintiff's residence in Nassau County because a substantial or the entire part of the events or omissions giving rise to his claims occurred in Nassau County, including his purchase, payment of money for or towards, use, and/or consumption of the Product based on the representations and omissions identified here.

65.  Venue is based on Plaintiff's residence in Nassau County because this is where his causes of action accrued, including his purchase, payment of money for or towards, use and/or consumption of the Product.

66.  Plaintiff purchased, paid money for or towards, used and/or consumed

the Product in reliance on the representations and omissions identified here in Nassau County.

67.    Plaintiff first became aware the representations and omissions were false and misleading in Nassau County.

## PARTIES

68.    Plaintiff Joseph Fischetti is a citizen of Nassau County, New York.

69.    Defendant Mondelēz Global LLC produces and markets snack products under a variety of brands.

70.    Plaintiff is like most consumers and seeks foods promoted as containing ingredients which are indulgences, yet known to have health benefits, like real cheese.

71.    Plaintiff is like most consumers and values the nutrients provided by real cheese.

72.    Plaintiff is like most consumers and seeks foods promoted as containing the types of ingredients they are likely to have in their homes, like real cheese.

73.    Plaintiff is like most consumers and values the taste provided by real cheese.

74.    Plaintiff is like most consumers and looks to the front label of foods to see what he is buying and to learn basic information about them.

75.    Plaintiff is like most consumers and is accustomed to the front label of

packaging telling them if what they are buying contains an appreciable and/or predominant amount of the highlighted ingredients as part of the relevant portion of the food.

76.   Plaintiff is like most consumers and when he sees that a front label tells him a product is "made with" specific ingredients, he will expect that portion of the food contains a predominant amount of the highlighted ingredient.

77.   Plaintiff is like most consumers and when he saw the Product's front label telling him the "filling [is] Made With Real Cheese," with a "Cheese Flavored Filling With Other Natural Flavor," with pictures of two fresh wedges of bright cheddar cheese and pictures of crackers filled with what appeared to be cheese, he expected the primary, main or predominant component of the cheese flavored filling would be real cheese, not whey.

78.   Plaintiff read, saw and relied on the front label telling him the "filling [is] Made With Real Cheese" and had a "Cheese Flavored Filling With Other Natural Flavor," with pictures of two fresh wedges of bright cheddar cheese and pictures of crackers filled with what appears to be this cheese, expecting the primary, main or predominant component of the cheese flavored filling would be real cheese, not whey.

79.   Plaintiff purchased the Ritz Bits Cracker Sandwiches, promoted as having a "Filling Made With Real Cheese," with a "Cheese Flavored Filling With

Other Natural Flavor," and pictures of two fresh wedges of bright cheddar cheese and crackers filled with what appears to be this cheese, the labeling identified here, at grocery stores, drug stores, gas stations, pharmacies, big box stores, warehouse club stores, and/or convenience stores, in Nassau and/or Suffolk County, between January 2021 and January 2024.

80.   Plaintiff bought the Product at, around or exceeding the above-referenced price.

81.   Plaintiff paid more for the Product than he would have had he known the filling's predominant ingredient was not real cheese, and that the amount of real cheese, in absolute and/or relative terms, was de minimis or negligible, compared to lesser-valued and lower priced ingredients, like whey.

82.   The Product was worth less than what Plaintiff paid, and he would not have paid as much absent Defendant's false and misleading statements and omissions.

## CLASS ALLEGATIONS

83.   Plaintiff seeks to represent the following class:

> All persons in New York who purchased Ritz Bits Cracker Sandwiches, promoted as having a "Filling Made With Real Cheese," in New York during the statutes of limitations for each cause of action alleged.

84.   Excluded from the Class are (a) Defendant, Defendant's board members,

executive-level officers, and attorneys, and immediate family members of any of the foregoing persons, (b) governmental entities, (c) the Court, the Court's immediate family, and Court staff and (d) any person that timely and properly excludes himself or herself from the Class.

85.   Common questions of issues, law, and fact predominate and include whether Defendant's representations and omissions were and are misleading and if Plaintiff and class members are entitled to damages.

86.   Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

87.   Plaintiff is an adequate representative because his interests do not conflict with other members.

88.   No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

89.   Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

90.   The class is sufficiently numerous and likely includes several thousand people.

91.   This is because Defendant sells the Product to consumers from hundreds of stores in the State Plaintiff is seeking to represent.

92.   Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

## CAUSES OF ACTION

### COUNT I
New York General Business Law ("GBL") §§ 349 and 350

93.   Plaintiff incorporates by reference paragraphs 1-43.

94.   The purpose of the GBL is to protect consumers against unfair and deceptive practices.

95.   Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

96.   This is because consumers prefer foods with ingredients they are familiar with, like real cheese, for reasons including nutrition, taste and quality.

97.   The labeling of the Product violated the GBL because the representations and omissions it contained a "Filling Made With Real Cheese," with a "Cheese Flavored Filling With Other Natural Flavor," and pictures of two fresh wedges of bright cheddar cheese and crackers filled with what appears to be this cheese, when its filling consisted predominantly of ingredients other than real cheese, whey, was unfair and deceptive to consumers.

98.   Plaintiff believed the Product's filling was predominantly real cheese instead of whey.

99.   Plaintiff paid more for the Product and would not have paid as much if

he knew that the filling was mostly not real cheese, but the lesser quality cheese substitute of whey.

100. Plaintiff seeks to recover for economic injury and/or loss he sustained based on the misleading labeling and packaging of the Product, a deceptive practice under the GBL, by paying more for it than he otherwise would have.

101. Plaintiff will produce evidence showing how he and consumers paid more than they otherwise would have paid for the Product, relying on Defendant's representations and omissions, using statistical and economic analyses, hedonic regression, hedonic pricing, conjoint analysis and other advanced methodologies.

102. As a result of Defendant's misrepresentations and omissions, Plaintiff and class members suffered damages in the price premium paid for the Product, which is the difference between what they paid for it and how much it would have been sold for without the false and misleading representations and omissions identified here.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2. Awarding monetary damages and interest;

3. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

4. Other and further relief as the Court deems just and proper.

Dated:   February 14, 2024

Respectfully submitted,

/s/ Spencer Sheehan
Sheehan & Associates P.C.
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com

*Notice of Lead Counsel Designation:*

*Lead Counsel for Plaintiff*

Spencer Sheehan

Sheehan & Associates P.C.

*Counsel for Plaintiff*